# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORMAN HANSEN, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 16-5028 |
| | : | |
| INTERNATIONAL PAINTERS AND | : | |
| ALLIED TRADES INDUSTRY PENSION | : | |
| PLAN and BOARD OF TRUSTEES OF THE | : | |
| INTERNATIONAL PAINTERS AND | : | |
| ALLIED TRADES INDUSTRY PENSION | : | |
| PLAN, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                              **OCTOBER 11, 2017**

Plaintiff Norman Hansen ("Plaintiff") filed suit in this Court under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, seeking disability pension benefits that he believes were wrongfully denied by Defendant International Painters and Allied Trades Industry Pension Plan (the "Pension Plan" or "Pension Fund") and Defendant Board of Trustees of the International Painters and Allied Trades Industry Pension Plan (the "Board") (collectively, "Defendants"). Plaintiff also claims a document penalty under ERISA for failure to provide plan documents, a breach of fiduciary duty, and equitable relief.

Presently before the Court are Plaintiff's and Defendants' Cross-Motions for Summary Judgment, along with numerous briefs in support and opposition to the respective motions. For the reasons noted below, Plaintiff's Motion for Summary Judgment is denied. However, as it relates to Count I of the Complaint, this matter is remanded to the Board of Trustees for

consideration of whether a collective bargaining agreement ("CBA") between Plaintiff's

employer and the International Union of Painters and Allied Trades ("IUPAT") obligates the

employer to contribute to the Pension Plan for hours for workers' compensation, unemployment

compensation, and vacation time. Defendants' Motion is granted as to Counts II, III, and IV, but

is denied as it pertains to Count I.

## I.    <u>BACKGROUND</u>

Plaintiff worked as a painter and was an active member of the IUPAT from 1982 to 2012.

(Compl. ¶ 9.) He was a vested participant in the Pension Fund, which was established to provide

retirement benefits for employees covered under CBAs between employers and the IUPAT. (<u>Id.</u>

¶ 2; Def.'s Mem. Support Mot. Summ. J. at 1 (citing Administrative Record ("AR") 32, 157,

160).)[1] The Pension Plan is a multiemployer defined benefit plan for purposes of ERISA.

(Compl. ¶ 2.) The Board of Trustees, which is composed of an equal number of IUPAT and

employer representatives, administers the Plan and is the "named fiduciary" under ERISA. (<u>Id.</u> ¶

3; <u>see also</u> AR 479.)

On January 12, 2012, Plaintiff fell off of a ladder and injured his right knee while

working for Circle Wallcoverings, Inc. (Compl. ¶ 10.) Plaintiff and Circle Wallcoverings, Inc.

executed a Workers' Compensation Compromise and Release Agreement on August 8, 2013 for

an agreed-upon amount in settlement of all wage, medical, and specific loss benefits related to

the work injury. (<u>Id.</u> ¶ 12.) Plaintiff also sought disability benefits from the Social Security

Administration. (<u>See</u> AR 20.) By letter dated February 2, 2015, an administrative law judge

determined that Plaintiff was disabled under the meaning of the Social Security Act beginning on

---

[1] The Administrative Record can be located at Docket No. 9. The Administrative Record is bates-numbered from AR00001 to AR00636. For ease of use, the Court will put a space between the "AR" and the number value and will eliminate any unnecessary digits.

September 23, 2013.[2] (AR 27.) Plaintiff agreed to the September 23, 2013 determination for purposes of establishing disability under the Social Security Act. (Compl. ¶ 16.)

On February 14, 2015, Plaintiff applied for disability pension benefits from the Pension Fund. (Id. ¶ 13.) On March 10, 2015, the Pension Fund acknowledged receipt of his application and requested a copy of the Social Security Administration award to evaluate his claim. (Id. ¶ 14; see also AR 12.) The Pension Fund denied Plaintiff's application for benefits on April 1, 2015 because he did not meet the requirement of Article 6, Section 6.12(4), which provides that a claimant must have "at least 1,000 Hours of Service in Covered Employment in the two Calendar Years prior to the year in which he or she became disabled." (AR 33.)

Plaintiff timely appealed the denial by letter dated May 7, 2015. (See Compl. ¶ 19; AR 102-03.) The letter also included a request for copies of the IUPAT Pension Plan and any summaries; Plaintiff's disability pension application; annual statements of Plaintiff's pension benefits for 2011 and 2012; all records used to calculate Plaintiff's covered service for calendar years 2011 and 2012; and all other records related to Plaintiff's disability retirement application. (See AR 102.) In a letter dated May 27, 2015, Plaintiff reiterated his request for the various documents. (Compl. ¶ 20; AR 107.) On June 5, 2015, Plaintiff was provided with the 2015 Summary Plan Description ("SPD") of the IUPAT Pension Plan, his disability pension application and supporting documents, his pension statements from years 2011 and 2012, and "all other documents in the Fund's possession related to [his] benefit application and benefit calculation." (Compl. ¶ 21; AR 110.) The only document not provided to Plaintiff was the

---

[2] Specifically, Plaintiff applied for disability benefits on March 6, 2013, alleging that his disability began on January 24, 2012. (AR 20.) His claim was denied on June 14, 2013. (Id.) Plaintiff filed a written request for a hearing on June 19, 2013. (Id.) A hearing took place on October 29, 2014, where Plaintiff amended his alleged date of disability to May 27, 2013. (Id.)

actual IUPAT Pension Plan itself.  Plaintiff's appeal for review of the denial of benefits was

scheduled for the September 2015 Board of Trustees meeting.  (Compl. ¶ 23.)

On August 27, 2015, Plaintiff submitted a memorandum to Corinne M. Koch, the

Pension Fund Administrator at the time, in support of his appeal.  (AR 43-55.)  The

memorandum advanced several arguments for the basis of awarding benefits.  First, Plaintiff

claimed he had accumulated 998 hours for work in 2011 and 2012 and that Defendants should

have rounded-up to 1,000 hours to ensure he would meet the 1,000 hour requirement.  (AR 48-

51.)  He further argued that Defendants "cherry-picked" information because they had used his

earned hours for 2011 and 2012, which equates to 894 hours, instead of his paid hours in 2011

and 2012, which equates to 998 hours.  (Id.)  Second, Plaintiff contended that Defendants refused

to give him additional benefit hours with respect to workers' compensation, unemployment

compensation due to layoff, vacation pay, all of which were allegedly in violation of the service

crediting rules in 29 C.F.R. § 2530.200b-2.  (AR 51-54.)  On September 24, 2015, the Pension

Fund postponed Plaintiff's appeal to the December 2015 meeting of the Board of Trustees.  (AR

150.)  On October 2, 2015, the Pension Fund provided to Plaintiff via email the IUPAT Pension

Plan in effect as of January 2010 and January 2015.  (AR 153.)  Plaintiff's counsel requested

hard copies of the documents, and the Pension Fund provided them on October 27, 2015.  (AR

155.)

The Board of Trustees denied Plaintiff's appeal at the December 2015 meeting.  The

Board mailed their decision to Plaintiff by letter dated December 22, 2015, concluding that he

lacked the required work credit in years 2011 and 2012 because his benefit hours totaled 894.

(AR 157-59.)  The Board of Trustees further stated that he was not entitled to additional credit

for workers' compensation, unemployment compensation, vacation payments because pursuant

to the Pension Plan, "[t]here [was] no indication that [Plaintiff's] employer was obligated to make contributions to the Plan for [those] payment[s]." (AR 158.) As mentioned above, Section 6.12(a)(4) of Article 6 provides that a claimant must have "at least 1,000 Hours of Service in Covered Employment in the two Calendar Years prior to the year in which he or she became disabled." (AR 33.) As applicable to Plaintiff, the Board of Trustees relied on subsection (a) of the definition of "Covered Employment," which is "work or leave time that is . . . Hours of Service for which an Employer is obligated to make contributions to the Plan or the Trust for credit to the Plan." (AR 421.) In denying credit for workers' compensation, unemployment compensation, and vacation payments, the Board of Trustees concluded there was no indication that Plaintiff's employer was obligated to make contributions to the Pension Plan for the additional hours he sought.

Plaintiff filed a four-count Complaint in this Court on September 20, 2016. Count I is a claim for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B); Count II is a failure to provide plan documents claim in violation of 29 U.S.C. § 1132(c)(1); Count III is a breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(2); and Count IV is a request for equitable relief under 29 U.S.C. § 1132(a)(3). The parties filed Cross-Motions for Summary Judgment on August 4, 2017.

## II.  LEGAL STANDARD

### A.  Rule 56(a) Standard

Federal Rule of Civil Procedure 56(a) states that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party

must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998) (quoting Liberty Lobby, 477 U.S. at 255).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." See Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. Tziatzios v. United States, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there are no genuine disputes of material fact, then summary judgment will be granted. Celotex, 477 U.S. at 322.

**B.      Denial of Benefits Under ERISA**

A plan administrator's denial of benefits is reviewed under a *de novo* standard unless "the plan document 'gives the administrator or fiduciary discretionary authority to determine

eligibility for benefits or to construe the terms of the plan.'"[3] Dowling v. Pension Plan For

Salaried Emps. of Union Pac. Corp. & Affiliates, --F.3d--, No. 16-1977, 2017 WL 4079460, at

*4 (3d Cir. Sept. 15, 2017) (quoting Conkright v. Frommert, 559 U.S. 506, 512 (2010)). "If the

plan gives the administrator or fiduciary discretionary authority to make eligibility

determinations, [a court] review[s] its decisions under an abuse-of-discretion (or arbitrary and

capricious) standard." Viera v. Life Ins. Co. of N. Am., 642 F.3d 407, 413 (3d Cir. 2011) (citing

Glenn, 554 U.S. at 111 (2008); Doroshow v. Hartford Life & Accident Ins. Co., 574 F.3d 230,

233 (3d Cir. 2009)) (footnote omitted). The abuse-of-discretion standard of review is used

interchangeably with the arbitrary and capricious standard of review in the ERISA context. Id. at

413 n.4 (citing Howley v. Mellon Fin. Corp., 625 F.3d 788, 793 n.6 (3d Cir. 2010)). "Under the

abuse-of-discretion standard, [a court] may overturn an administrator's decision only if it is

'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Id.

(citing Miller, 632 F.3d at 845).

"ERISA plan administrators are fiduciaries, and 'if a benefit plan gives discretion to an

administrator or fiduciary who is operating under a conflict of interest, that conflict must be

weighed as a facto[r] in determining whether' the administrator's benefits decision should

stand." Dowling, 2017 WL 4079460, at *8 (quoting Firestone Tire & Rubber Co. v. Bruch, 489

U.S. 101, 115 (1989)) (alteration in original). "The factors may include procedural concerns

about the administrator's decision-making process and structural concerns about the conflict of

interest inherent in the way the ERISA-governed plan was funded." Patrick v. Devon Health

---

[3] Plaintiff argues that his denial of benefits should be reviewed under the heightened "sliding scale" approach. (Pl.'s Br. Support Mot. Summ. J. at 7-9.) However, the United States Court of Appeals for the Third Circuit ("Third Circuit") has clearly held that, in light of the Supreme Court of the United States' ("Supreme Court") decision in Metro. Life Ins. Co. v. Glenn, 554 U.S. 105 (2008), the sliding scale approach is no longer valid. See Miller v. Am. Airlines, Inc., 632 F.3d 837, 845 n.3 (3d Cir. 2011) ("As a result of Glenn, the 'sliding scale' approach is no longer valid.")

Servs., Inc., 828 F. Supp. 2d 781, 793 n.14 (E.D. Pa. 2011). "'[T]he procedural inquiry focuses on how the administrator treated the particular claimant.'" Miller, 632 F.3d at 845 (quoting Post v. Hartford Ins. Co., 501 F.3d 154, 162 (3d Cir. 2007)). "Specifically, in considering the process that the administrator used in denying benefits, we have considered numerous irregularities to determine whether, in this claimant's case, the administrator has given the court reason to doubt its fiduciary neutrality." Id. (quoting Post, 501 F.3d at 165) (internal quotation marks omitted). However, the lawfulness of the administrator's decision will rest on case-specific factors that must be weighed together. See id. (quoting Glenn, 554 U.S. at 117).

"In applying the arbitrary and capricious standard in ERISA actions, a court is limited to reviewing the evidence contained within the administrative record." Clauss v. Plan, 196 F. Supp. 3d 463, 469 (M.D. Pa. 2016) (citing Abnathya v. Hoffman-La Roche, Inc., 2 F.3d 40, 48 n.8 (3d Cir. 1993), abrogated on other grounds by Glenn, 554 U.S. at 105); see also Mitchell v. Eastman Kodak Co., 113 F.3d 433, 440 (3d Cir. 1997).

## III.   **DISCUSSION**

### A.   **The Appropriate Standard of Review and Whether a Conflict of Interest Exists**

A *de novo* standard of review of the administrator's denial of benefits is appropriate unless the terms of the plan give the administrator discretionary authority to determine benefits eligibility or to construe the terms of the plan. See Dowling, 2017 WL 4079460, at *4 (citation omitted). If the terms of the plan give the administrator such discretion, then the arbitrary and capricious standard is applicable. See Viera, 642 F.3d at 413.

There is no question that the Board of Trustees is authorized with the exclusive right of discretion to construe the terms of the IUPAT Pension Plan and determine eligibility for

benefits.[4]  (See AR 391-92.)  Accordingly, the Court will review the Board of Trustees' denial of Plaintiff's disability benefits under the arbitrary and capricious standard.

What the parties dispute, however, is if there is a conflict of interest that the Court should weigh as a factor when determining whether the Board of Trustees' decision was arbitrary and capricious.  Plaintiff argues there is a structural and procedural conflict of interest that must be taken into account in this case.  (See Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. at 5-9.) Defendants respond by claiming that multiemployer benefit plans, by their very nature, do not have conflicts of interest within the meaning of Glenn.  (See Defs.' Mem. Support Mot. Summ. J. at 7-8.)  Importantly, the mere presence of a conflict does not change the standard of review from arbitrary and capricious to de novo.  See Dowling, 2017 WL 4079460, at *8 (citing Glenn, 554 U.S. at 115).

In Glenn, the Supreme Court agreed to answer the questions as to whether a plan administrator that both evaluates and pays claims is operating under a conflict of interest, and if so, how such a conflict should be taken into account when there is judicial review of a discretionary benefit determination.  See Glenn, 554 U.S. at 110.  In answering the first question, the Supreme Court held that a conflict of interest exists when a plan administrator both evaluates and pays claims for benefits.  See id. at 112.  In a more narrow statement, the Court then provided that the "answer is clear where it is the employer that both funds the plan and evaluates

---

[4] Specifically, the IUPAT Pension Plan provides,

> The Trustees shall, subject to the requirements of the law, be the sole judges of the standard of proof required in any case and the application and interpretation of this Plan.  The Trustees shall have the exclusive right and discretionary authority to construe the terms of the Plan, to resolve any ambiguities and to determine any questions which may arise in connection with the Plan's application or administration, including but not limited to determination of eligibility for benefits.  Wherever the Trustees are given discretionary powers, the Trustees shall exercise such powers in a uniform and nondiscriminatory manner.

(AR 391-92.)

the claims." <u>Id.</u> at 112. As to the second question the Court agreed to answer, if a conflict does indeed exist, it is simply "one factor among many that a reviewing judge must take into account." <u>Id.</u> at 116; <u>see</u> <u>also</u> <u>Dowling</u>, 2017 WL 4079460, at *8.

The IUPAT Pension Plan is a multiemployer defined benefit plan that is funded through contributions employers make pursuant to CBAs between the IUPAT and the employers. (<u>See</u> AR 565.) The Board, which is composed of an equal number of employer and union representatives, is the plan administrator and named fiduciary of the Pension Plan under ERISA. (<u>See</u> AR 329, 563, 565.) As mentioned above, they have discretion to interpret the Pension Plan and make benefit eligibility determinations. (<u>See</u> AR 391-92.)

There appears to be a circuit split regarding whether multiemployer pension plans such as this are conflicted within the meaning of <u>Glenn</u>, and the Third Circuit has not yet spoken on this issue. As articulated in <u>Glenn</u>, the first step of the conflict analysis turns on whether the plan administrator is both evaluating and paying claims. <u>See</u> <u>Glenn</u>, 554 U.S. at 112. In <u>Durakovic v. Bldg. Serv. 32 BJ Pension Fund</u>, the United States Court of Appeals for the Second Circuit ("Second Circuit") held that multiemployer benefit plans are conflicted because the evaluation of claims is "entrusted (at least in part) to representatives of the entities that ultimately pay the claims allowed." 609 F.3d 133, 139 (2d Cir. 2010). While the employer representatives have fiduciary interests that weigh in favor of the trusts' beneficiaries, they also have interests that weigh to the contrary by virtue of them representing the employer. <u>See</u> <u>id.</u> The fact that the board was evenly balanced between union and employer representatives had no influence on whether a conflict existed, and the existence of union representation is something that a court should consider at the second step of the <u>Glenn</u> analysis, which is determining how heavily to weigh the conflict. <u>See</u> <u>id.</u>

Conversely, in Anderson v. Suburban Teamsters of N. Ill. Pension Fund Bd. of Trustees, the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") held that multiemployer benefit trust funds are not conflicted within the meaning of Glenn. 588 F.3d 641, 648 (9th Cir. 2009); see also Tompkins v. Cent. Laborers' Pension Fund, 712 F.3d 995, 1000-01 (7th Cir. 2013) ("We held that a conflicts analysis was not necessary when the plan at issue was a multi-employer welfare plan whose trustees consisted of an equal number of union and employer representatives, whose union representatives had 'no discernible incentive to rule against an applicant,' and whose trustees were unanimous in their ruling."); Klein v. Cent. States, Se. & Sw. Areas Health and Welfare Plan, 346 F. App'x 1, 3 (6th Cir. 2009) (not precedential). The Anderson court reasoned that the trustees had no personal economic interest in the decision to grant or deny benefits because participating employers, not the trustees, fund the plan. See id. Further, the court found persuasive the fact that the trustees were composed of an equal number of union and employer representatives. See id.

We find the Second Circuit's decision in Durakovic more persuasive. In Anderson, the Ninth Circuit relied on Glenn for the proposition that "[a] conflict of interest exists 'where it is the employer that both funds the plan and evaluates the claims.'" Id. (quoting Glenn, 554 U.S. at 112). Of course, that proposition is a correct statement of law. But the Supreme Court's holding in Glenn went beyond whether a conflict exists when it is the employer that evaluates and pays the benefits claims. In Glenn, the Court addressed the issue very succinctly: "whether the fact that a plan administrator both evaluates claims for benefits and pays benefits claims creates . . . a conflict of interest. . . . In our view, it does." Glenn, 554 U.S. at 112 (internal quotation marks omitted). The initial determination of the existence of a conflict of interest is quite simple. According to the first step of a Glenn conflict analysis, a court must ask if it is the plan

administrator that both evaluates benefit eligibility and pays the benefits. See Durakovic, 609 F.3d at 138. If so, a structural conflict of interest exists that the court must weigh in determining whether the administrator's decision to deny benefits was arbitrary and capricious. See id. at 138-39. The cases Defendants rely on fail to take into account the more expansive nature of Glenn. Accordingly, because the Board of Trustees both evaluates claims and the funds are paid out of the Plan, there is a conflict of interest pursuant to Glenn.

The second step in the Glenn analysis focuses on how heavily to weigh the conflict of interest identified. See Glenn, 554 U.S. at 115; Durakovic, 609 F.3d at 138.

> The conflict of interest at issue . . . should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

Glenn, 554 U.S. at 117. The Third Circuit has "only been willing to disturb an administrator's decision based on a conflict of interest if evidence either suggests the conflict actually infected the decisionmaking or if the conflict is one last straw that calls a benefits determination into question." Dowling, 2017 WL 4079460, at *9.

Plaintiff actually makes no argument as to how heavily the Court should weigh the conflict of interest inherent in the IUPAT Pension Plan. He simply argues that there are several instances where the conflict is apparent, and why the Court should consider them in evaluating the potential arbitrary and capricious nature of the Board of Trustees' decision. First, he argues that the Board's failure to round his hours up from 998 to 1,000, which is specifically permitted

under 29 C.F.R. § 2530.200b-2(a), demonstrates a conflict.[5]  (See Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. at 7.)  Second, Plaintiff claims there was a four month delay from when he appealed his decision on May 20, 2015, and when Defendants scheduled his appeal at the September 2015 Board of Trustees meeting.  (See id. at 8.)  He contends the four month delay was improper because Section 9.07(b) of the IUPAT Pension Plan provides that a decision on an administrative appeal "will be made by the Trustees at or before the next regular meeting of the Trustees scheduled at least thirty (30) days after the appeal is received."  (See id.; see also AR 392.) Lastly, he claims that the Board's decision to postpone his appeal until the December 2015 meeting was improper.  (See Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. at 8-9.)

The Court will give extremely little weight to the Board's conflict of interest in this matter.  Regarding Plaintiff's first argument of the Board's failure to round his hours from 998 to 1,000, 29 C.F.R. § 2530.200b-2(a) is clearly discretionary in that it allows the *employer* to round up hours at the end of the computation period.  Second, even if the Board improperly scheduled the appeal for September 2015 and postponed it to December 2015, that lone fact shows no evidence of an infection of the decision-making or a last straw to call the benefits determination into question.  See Dowling, 2017 WL 4079460, at *9.  Accordingly, while there is a conflict of interest in this matter, the Court will give it very little weight in determining whether the Board's decision was arbitrary and capricious.

---

[5] 29 C.F.R. § 2530.20b-2(a) provides,

> General rule.  An hour of service which must, as a minimum, be counted for the purposes of determining a year of service, a year of participation for benefit accrual, a break in service and employment commencement date (or reemployment commencement date) under sections 202, 203 and 204 of the Act and sections 410 and 411 of the Code, is an hour of service as defined in paragraphs (a)(1), (2) and (3) of this section. *The employer may round up hours at the end of a computation period or more frequently.*

29 C.F.R. § 2530.200b-2(a) (emphasis added).

**B.      Count I:  Denial of Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)**

"Section 502(a)(1)(B) of ERISA allows a participant to bring a claim to recover benefits due to him under the terms of the plan."  Miller, 632 F.3d at 845 (citing 29 U.S.C. § 1132(a)(1)(B)).  Plaintiff makes two main arguments regarding why the Board improperly denied him benefits under ERISA.  First, Plaintiff claims Defendants incorrectly determined that he had 894 hours of service and not 998 hours.  (See Pl.'s Opp'n Defs.' Mot. Summ. J. at 9-11.)  Based on the 998 hours of service, Plaintiff argues that Defendants should have rounded-up his hours to meet the 1,000 threshold as required by the Pension Plan.  (See id. at 12.)  Second, Plaintiff argues that regardless of whether the amount of hours is 894 or 998, Defendants failed to credit him with any additional hours for workers' compensation, unemployment compensation, and vacation benefits, which would have given him the requisite 1,000 hours needed to obtain disability benefits.  (See Pl.'s Br. Support Mot. Summ. J. at 14.)

**1.      Plaintiff's Total Hours in 2011 and 2012 Based on the Pension Statements**

The Court will first analyze the parties' dispute of whether Plaintiff's hours in 2011 and 2012 totaled 894 or 998, without any discussion as to whether he is entitled to potential hours for workers' compensation, unemployment compensation, and vacation benefits.  The basis of the disagreement originates in two documents titled, "Employee Pension Statement for Year 2011" and "Employee Pension Statement for Year 2012."  (See AR 1, 2.)  Under "Benefit Hours," the "Total Activity Posted for the Calendar Year of 2011" is 910.00, and for 2012 is listed to be 88.00.  (See AR 1, 2.)  Thus, Plaintiff claims his total hours for 2011 and 2012 is 998.

However, the 2011 pension statement includes a total of 104 hours for work performed in December 2010.  (See AR 1.)  The Board excluded the 104 hours from its calculation because 2011 pension statement "show[s] all Benefit Hours PAID in 2011.  Only 806 Benefit Hours were

earned in 2011." (AR 158) (emphasis in original). Accordingly, the Board concluded that Plaintiff had 806 benefit hours in 2011 and 88 benefit hours in 2012, which equates to 894. (See id.)

The Court agrees with the Board of Trustees that Plaintiff accumulated 894 hours, excluding any potential hours for workers' compensation, unemployment compensation, or vacation pay. The parties' dispute concerning the correct amount of hours can be disposed of simply by looking to some of the IUPAT Pension Plan definitions. Section 6.12(a)(4) of the Pension Plan provides that a participant is entitled to disability pension benefits when, *inter alia*, he or she "[h]as at least 1,000 Hours of Service in Covered Employment in the two Calendar Years prior to the year in which he or she became disabled." (AR 358-59.) At this juncture, neither of the parties dispute that the hours on the 2011 and 2012 pension statements are not "Hours of Service" or in "Covered Employment." What is relevant is how the Pension Plan defines "Calendar Year."

The IUPAT Pension Plan defines "Calendar Year" as "the period from January 1 to the next December 31. For purposes of ERISA regulations, the Calendar Year shall serve as the vesting computation period, the benefit accrual computation period, and, after the initial period of employment, the computation period for eligibility to participate in the Plan." (AR 421.) Plaintiff agreed to the Social Security Administration's determination of disability onset as of September 26, 2013. (Compl. ¶ 16.) Therefore, the two calendar years that are relevant for the benefit hours calculation are 2011 and 2012. Under the Pension Plan's definition of "Calendar Year," the period applicable to Plaintiff would be January 1, 2011 through December 31, 2011,

and January 1, 2012 through December 31, 2012.  (See AR 421.)  Accordingly, the Defendants

were correct to exclude the 104 hours for December 2010.[6]

### 2.      Credit for Additional Hours for Workers' Compensation, Unemployment Compensation, and Vacation Time

A more difficult argument is that Defendants failed to credit Plaintiff with additional

hours for workers' compensation, unemployment compensation, or vacation time.  For purposes

of clarity, the Court once again reiterates that a participant is entitled to disability pension

benefits if, *inter alia*, he or she "[h]as at least 1,000 Hours of Service in Covered Employment in

the two Calendar Years prior to the year in which he or she became disabled."  (AR 358-59.)

"Hours of Service," in turn, is defined as

> (a)      Each hour for which an Employee is paid or entitled to payment for the performance or nonperformance of duties with an employer.
>
> *           *           *
>
> (c)      Each hour for which an Employee is paid, or entitled to payment, by an employer, its agent or a plan maintained by the employer on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to *vacation*, holiday, illness, *incapacity (including disability)*, *layoff*, jury duty, military duty or *leave of absence* other than payments made solely for the purpose of complying with applicable worker compensation, unemployment compensation or disability insurance laws or to provide reimbursement of medical expenses.
>
> (d)      Hours of service shall be computed and credited in accordance with DOL Regulation 2530.200-b(2) [sic].

---

[6] Given that Plaintiff accumulated 894 benefit hours in 2011 and 2012 (excluding any potential hours for workers' compensation, unemployment compensation, or vacation time), the Court does not need to address Defendants' failure to round-up Plaintiff's hours from 998 to 1,000.

(AR 424) (emphasis added).  Finally, subsection (a) of "Covered Employment" is "work or leave time that is . . . Hours of Service for which an Employer is obligated to make contributions to the Plan or the Trust for credit to the Plan."[7]  (AR 421.)

Relying on subsection (a) of the definition of "Covered Employment," the Board of Trustees concluded there was "no indication that [Plaintiff's] employer was obligated to make contributions to the Plan for a payment made" for the additional hours that Plaintiff sought.  (See AR 158-59.)  Defendants make the same argument in the instant Cross-Motions for Summary Judgment, along with reliance on 29 C.F.R. § 2530.200b-2(a)(2)(ii) for the proposition that "[w]orkers' compensation and unemployment compensation do not require hours of service credit for any purpose."  (Defs.' Mem. Support Mot. Summ. J. at 13 n.6.)

The definition of "Hour of Service" specifically incorporates the computation and crediting rules in 29 C.F.R. § 2530.200b-2.  (See AR 424.)  Section 2530.200b-2(a)(2) provides that an hour of service is an hour "for which an employee is paid, or entitled to payment, by the employer on account of a period of time which no duties are performed . . . due to vacation . . . incapacity (including disability), layoff . . . or other leave of absence."  § 2530.200b-2(a)(2). However, those hours are not required to be credited to the employee "if such payment is made or due under a plan maintained solely for the purpose of complying with applicable workmen's compensation, or unemployment compensation or disability insurance laws."[8]  § 2530.200b-2(a)(1)(ii).

---

[7] Neither party contends that any other subsection of the definition of "Covered Employment" is applicable.

[8] There appears to be an inconsistency between the definition of "Hours of Service" in the IUPAT Pension Plan and the computation and crediting rules in 29 C.F.R. § 2530.200b-2.  The IUPAT Pension Plan exempts crediting hours for "vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence," but only if the *payments* are made to comply with applicable workers' compensation, unemployment compensation, or disability insurance laws.  (See AR 424).  Section § 2530.200b-2(a)(1)(ii), on the other hand, exempts crediting those hours if the *plan is solely maintained* to comply with applicable workers' compensation, unemployment compensation, or disability insurance laws.  See 29 C.F.R. § 2530.200b-2(a)(1)(ii).  The Court will consider the

Plaintiff relies on numerous documents from the Administrative Record to show that he should have been credited with additional hours for workers' compensation, unemployment compensation, and vacation time. Regarding workers' compensation, Plaintiff relies on a "Compromise and Release Agreement by Stipulation Pursuant to Section 449 of the Workers' Compensation Act," dated August 8, 2013, which purports to show that he was receiving workers' compensation in the amount of $888.00 per week from the date of his injury, January 12, 2012, until the executed release on August 8, 2013. (See AR 57-62.) Plaintiff also relies on a "Statement for Recipients for PA Unemployment Compensation Payments UC-1099G," which he claims shows he received unemployment compensation in 2011 in the amount of $8,509.00. (See AR 120.) Lastly, he relies on his "2011 W2 & Earnings Summary," which purports to show vacation benefits in the total amount of $822.00. (See AR 116.)

All of the hours Plaintiff claims appear to come within the definition of "Hour of Service." Indeed, Defendants concede that vacation time "may" fall within the definition of "Hour of Service." (See Defs.' Mem. Support Mot. Summ. J. at 13.) Additionally, there is no claim or evidence in the Administrative Record that the IUPAT Pension Plan is maintained solely to comply with applicable workers' compensation, unemployment compensation, or disability insurance laws. See 29 C.F.R. § 2530.200b-2(a)(2)(ii). Accordingly, there is no basis for the Court to determine that hours for workers' compensation and unemployment compensation do not fit within the definition of "Hour of Service."

---

computation and crediting rules in § 2530.200b-2 to control for three reasons. First, the IUPAT Pension Plan's definition of "Hour of Service" specifically incorporates 29 C.F.R. § 2530.200b-2. (See AR 424.) Second, 29 C.F.R. § 2530.200b-2(f) provides that "[a] plan which credits service on the basis of hours of service must state in the plan document the definition of hours of service set forth in paragraph (a) of this section." Third, Defendants rely on the regulation for purposes of stating that workers' compensation and unemployment compensation do not require service credit for any purpose. (See Defs.' Mem. Support Mot. Summ. J. at 13.)

Even so, Defendants argue that the additional hours to which Plaintiff claims an entitlement are not in "Covered Employment" as the disability pension eligibility requires. (See Defs.' Mem. Support Mot. Summ. J. at 13-14; see also AR 358-59.) As the definition pertains to Plaintiff, "Covered Employment" is "Hours of Service for which an Employer is obligated to make contributions to the Plan or the Trust for credit to the Plan." (AR 421.) Defendants in the instant matter essentially rely on the Board of Trustees' reasoning in not crediting Plaintiff with the additional hours for workers' compensation, unemployment compensation, and vacation time: "there is no claim or evidence in the record that contributions were paid or payable for the additional hours that [Plaintiff] seeks." (Defs.' Mem. Support Mot. Summ. J. at 14.) Defendants' argument, therefore, begs the following question: who or what determines whether contributions are paid or payable to the IUPAT Pension Plan for workers' compensation, unemployment compensation, and vacation time?

Defendants' reliance on the absence of a claim or evidence in the record that contributions were paid or payable for the additional hours Plaintiff seeks is somewhat troubling. The IUPAT Pension Plan is a multiemployer benefit plan where employers make contributions pursuant to CBAs between themselves and the IUPAT. (See AR 481.) The IUPAT Pension Plan SPD describes how contributions are made to the Pension Plan as follows:

> Contributions to the Plan are made by employers in accordance with collective bargaining agreements between the IUPAT and the Employers and related participation agreements with the Trustees. In general, these agreements provide that employers contribute to the Plan for covered work on the basis of a fixed rate per hour for all hours paid. In some instances, contributions are made by employers on the basis of a percentage of the employee's pay.

(AR 565.) Accordingly, it appears that the CBA between the IUPAT and the employer would reveal whether the additional hours Plaintiff seeks are in "Covered Employment."

However, this fact puts the Court in a difficult position. On the one hand, it seems that whether Plaintiff's employer was obligated to make contributions to the Pension Plan for the additional hours is determined under a CBA. The Board of Trustees apparently did not consider the CBA, nor was it included in the Administrative Record. On the other hand, Defendants are correct in stating that, at this stage of the proceedings, there is no claim or evidence that such contributions were required. Moreover, in reviewing ERISA benefits determinations, the Court cannot consider material outside of the Administrative Record. See Clauss, 196 F. Supp. 3d at 469 (citing Abnathya, 2 F.3d at 48 n.8, abrogated on other grounds by Glenn, 554 U.S. at 105); see also Mitchell, 113 F.3d at 440.

In light of the Board of Trustees' failure to consider the CBA in this matter, the Court cannot conclude that the decision to deny Plaintiff disability pension benefits was based on substantial evidence. The Board cannot simply state there is no evidence or indication in the record that the employers were obligated to make contributions for the additional hours that Plaintiff seeks, when the answer to that inquiry is found in the CBA between the employer and the IUPAT. Accordingly, the Board of Trustees' decision in denying Plaintiff benefits was arbitrary and capricious.

The Court must now determine what type of remedy is warranted. "In an ERISA benefits case, a court has discretion in fashioning a remedy." Levine v. Life Ins. Co. of N. Am., 182 F. Supp. 3d 250, 266 (E.D. Pa. 2016) (citing Carney v. Int'l Bhd. of Electrical Workers Local Union 98 Pension Fund, 66 F. App'x 381, 385-87 (3d Cir. 2003)). The Third Circuit's decision in Miller guides the Court's analysis. In Miller, the Third Circuit created a distinction between when benefits are denied at the outset, and the termination of benefits after they have already been awarded. Miller, 632 F.3d at 856. When benefits have been denied at the outset, it is

appropriate to remand to the plan administrator to "reevaluate the case using reasonable discretion." See id. at 856-57. If benefits have been terminated after they have already been awarded and the court finds the decision to be arbitrary and capricious, the benefits should be restored to the status quo. See id. at 857.

Remand to the Board of Trustees is appropriate in this case. Here, the Board denied Plaintiff disability pension benefits at the outset because there was no evidence that his employer was obligated to make payments to the Pension Plan for the additional hours for workers' compensation, unemployment compensation, and vacation time. However, the answer to the question of whether Plaintiff's employer was obligated to make contributions to the Pension Plan for those hours would be found in the CBA. It may very well be that the employers were not required to make such contributions, and therefore, the hours would not be considered in "Covered Employment." However, the Board of Trustees did not make that determination when it denied Plaintiff's initial claim and his appeal for benefits. Accordingly, we remand this matter for the Board to take into account whether such payments to the Plan were required pursuant to a CBA for the additional hours that Plaintiff seeks.

### C.       Count II: Failure to Provide Documents Under 29 U.S.C. § 1132(c)(1)

Pursuant to 29 U.S.C. § 1132(c)(1), a plan administrator must comply with a plan participant's request for information within thirty days or face, at the Court's discretion, personal liability in the amount of up to $100 per day from the date of the refusal. See Syed v. Hercules Inc., 214 F.3d 155, 161 (3d Cir. 2000) (Alito, J.) (citing 29 U.S.C. § 1132(c)). As § 1132(c)(1) provides, courts have discretion in imposing a penalty for failure to provide plan documents. See Romero v. SmithKline Beecham, 309 F.3d 113, 120 (3d Cir. 2002) (Alito, J.) (citing 29 U.S.C. § 1132(c)(1)). The appropriate factors to consider in deciding to impose a penalty include (1) bad

faith or intentional conduct by the administrator; (2) the length of the delay; (3) the number of requests made and the documents withheld; and (4) the existence of prejudice. See id.

The record reveals that Plaintiff made a written request for various documents in his May 7, 2015 appeal letter. (See AR 35.) After reiterating his request on May 27, 2015, (see AR 107-08), Plaintiff claims he received the 2006 SPD of the IUPAT Pension Plan, his disability pension application and supporting forms, his Employee Pension Statements for 2011 and 2012, and "all other documents in the Fund's possession related to [his] benefit application and benefit calculation." (See Pl.'s Br. Support Mot. Summ. J. at 5; see also AR 42.) Plaintiff was ultimately provided with the IUPAT Pension Plan document via email on October 2, 2015 and via mail on October 27, 2015. (See AR 153, 155.) Thus, Plaintiff claims the Defendants wrongfully withheld the actual IUPAT Pension Plan document for a period of 175 days in violation of ERISA. (See Pl.'s Br. Support Mot. Summ. J. at 5.) Further, Plaintiff claims a penalty for failure to produce three plan amendments, two of which were signed on September 16, 2015 and one signed on November 3, 2015. (See id.) The amendments were sent from defense counsel to Plaintiff's counsel on May 5, 2017 as part of a draft Administrative Record. (See id.) Plaintiff claims a document penalty of 729 days for failure to provide the amendments, which constitutes the time of his initial document request until the time the amendments were provided to him. (See id. at 6.) Plaintiff argues that the withholding of plan documents severely prejudiced him because he did not have them prior to the expiration of his administrative appeal deadline. (See Pl.'s Surreply Opp'n Defs.' Mot. Summ. J. at 3.)

Defendants respond by stating that Plaintiff suffered no prejudice because, even though the hearing date in front of the Board of Trustees had been changed from September 2015 to December 2015, Plaintiff did not alter his arguments in any manner. (See Defs.' Opp'n Pl.'s

Mot. Summ. J. at 5.)  Defendants further argue that the plan amendments were not adopted at the time of Plaintiff's May 7, 2015 request, and that ERISA imposes no continuing obligation to supplement plan document production after an initial request has been made.  (See id. at 5-6.)  Lastly, Defendants attach the sworn declaration of Laurie C. Smith, the current Administrative Department Manager of the Pension Plan.  (See Defs.' Reply Mem. Support Mot. Summ. J., Ex. 1 ("Smith Decl.") ¶ 2.)  Ms. Smith declares that "[a]ccording to the regular business records maintained by the Pension Plan, the 2015 Summary Plan Description for the Pension Plan . . . was mailed to all active participants in the Pension Plan computer system on or about March 31, 2015," and that Norman Hansen was listed as a recipient in the mailing list from March 31, 2015. (Smith Decl. ¶¶ 4, 5.)

The factors identified in Romero guide the Court's analysis as to whether a document penalty is appropriate.  First, there is no evidence in the record, nor does the Court discern, any bad faith or intentional conduct on the part of the Defendants in failing to provide the IUPAT Pension Plan document.  Second, there was a 117-day delay between the refusal to provide the IUPAT Pension Plan and the Defendants ultimately providing it to Plaintiff.[9]  Third, Plaintiff made a request for all relevant documents on May 7, 2015 and reiterated the request on May 27, 2015.  Nevertheless, despite Defendants providing numerous documents to Plaintiff and apparently neglecting to include the IUPAT Pension Plan itself, Plaintiff made no further effort to request the IUPAT Pension Plan document.

---

[9] Plaintiff is incorrect in his calculation that the failure to provide the IUPAT Pension Plan was 175 days.  29 U.S.C. § 1132(c)(1) provides that the penalty commence "from the date of such failure or refusal" to provide requested documents.  "Section 1132(c) characterizes the relevant 'failure' as the failure to provide the documents within 30 days of the participant's or beneficiary's request.  Effectively, there is a 30 day grace period in § 1132(c) before the 'failure' to provide the documents begins."  Daniels v. Thomas & Betts Corp., 263 F.3d 66, 80 (3d Cir. 2001).
    Thirty days after Plaintiff's May 7, 2015 request was June 6, 2015.  Thus, any "failure" or "refusal" would have begun on June 7, 2015.  There were 117 days between June 7, 2015 and Defendants' production of the IUPAT Pension Plan via email on October 2, 2015, thereby making 117 days the relevant time period for document penalty purposes.

Lastly, Plaintiff suffered no prejudice as a result of the withholding of the IPUAT Pension Plan. Plaintiff disingenuously claims that he suffered prejudice because he "could not argue the definitive service crediting rules during the administrative review process without the current [IUPAT Pension Plan]," as he did not have notice that 29 C.F.R. § 2530.200b-2 was incorporated into the Pension Plan's definition of "Hour of Service." (Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. at 4.) Plaintiff's memorandum submitted in support of his administrative appeal seriously discredits his argument regarding prejudice. While the documents provided to Plaintiff prior to his administrative appeal deadline may not have included the incorporation of § 2530.200b-2's crediting requirements, Plaintiff specifically relied on § 2530.200b-2 in support of his appeal. (See AR 49-50.) In fact, the arguments set forth in Plaintiff's memorandum in support of his administrative appeal are nearly identical in substance to the current briefing regarding the Cross-Motions for Summary Judgment. The fact that Plaintiff was not provided with the actual IUPAT Pension Plan until October 2015 was inconsequential to Plaintiff's arguments on appeal. Indeed, he did not even submit a supplemental memorandum when his hearing was changed from September 2015 to December 2015. Further, Plaintiff makes absolutely no argument that the three amendments to the IUPAT Pension Plan have any relevance to whether he is entitled to benefits. Accordingly, summary judgment with respect to Count II is granted as to Defendants and denied as to Plaintiff.

### D. Counts III and IV: Breach of Fiduciary Duty Under § 1132(a)(2) and Equitable Relief Under § 1132(a)(3)

Section 1132(a)(2) allows, among others, plan participants and beneficiaries to hold plan fiduciaries personally liable for breaching their fiduciary duties. See 29 U.S.C. § 1132(a)(2); Leckey v. Stefano, 501 F.3d 212, 217 (3d Cir. 2007). "A violation of those duties allows, by way of [29 U.S.C.] § 1109, three remedies: (1) making good on the loss caused by the breach, (2)

restoring any profits made using the assets of the plan, and (3) any other equitable or remedial relief the court deems appropriate." Leckey, 501 F.3d at 217. Section 1132(a)(2) claims address losses to ERISA plans due to fiduciary misconduct, and as a result, such actions are derivative in nature because the claim is brought on behalf of the plan itself. See Graden v. Conexant Sys. Inc., 496 F.3d 291, 295 (3d Cir. 2007); Leckey, 501 F.3d at 217. Consequently, "the plaintiff must assert a loss to the ERISA plan itself (not merely an individual claim for extracontractual damages)," and the "plan takes legal title to any recovery, which then inures to the benefit of the participants and beneficiaries who were injured." Leckey, 501 F.3d at 217; Bixler v. Cent. Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1296 (3d Cir. 1993). Section 1109 does not authorize recovery to an individual, but only to the plan. See Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 150 (1985) (Brennan, J., concurring); Varity Corp. v. Howe, 516 U.S. 489, 510 (1996) (citing Russell, 473 U.S. at 144); see also Bixler, 12 F.3d at 1298 (adopting Justice Brennan's concurrence in Russell).

"To support a claim for breach of fiduciary duty under sections [1132(a)(2) and 1109(a)], [a] plaintiff must prove that (a) each defendant was an ERISA fiduciary; (b) each defendant breached an ERISA-imposed duty; and (c) such breach caused a loss to the Plan." Nagy v. DeWese, 771 F. Supp. 2d 502, 509 (E.D. Pa. 2011). The proper defendant in a § 1132(a)(2) claim is a plan fiduciary in its individual capacity. See Graden, 496 F.3d at 301.

Defendants move for summary judgment on Count III because Count III simply restates Counts I and II. (See Defs.' Mem. Support Mot. Summ. J. at 17.) Defendants apparently believe that Plaintiff's claim for breach of fiduciary duty was brought under § 1132(a)(3), (see id.), although an examination of Plaintiff's Complaint reveals the claim is actually brought under § 1132(a)(2), (see Compl.).

Neither of the parties have briefed the issue of whether § 1132(a)(2) is the appropriate statutory vehicle for Plaintiff's claim of breach of fiduciary duty in this case. However, it is obvious that Plaintiff's fiduciary claim is not cognizable under § 1132(a)(2). See, e.g., Clark v. Feder Semo & Bhd., P.C., 527 F. Supp. 2d 112, 117-18 (D.D.C. 2007); Fairview Health Servs. v. Ellerbe Becket Co. Employee Med. Plan, No. 06-2585, 2007 WL 978089, at *6 (D. Minn. Mar. 28, 2007) Plaintiff has not brought a derivative suit to recover damages on behalf of the Plan. Rather, he brings suit for violations of ERISA that are specific to him, such as the improper denial of benefits and failure to produce plan documents. Third Circuit precedent makes clear that § 1109 (and thus § 1132(a)(2)) does not authorize recovery for an individual, but only the plan. See Bixler, 12 F.3d at 1298. Further, Plaintiff has not sued the members of the Board of Trustees in their individual capacities, as a § 1132(a)(2) claim requires. See Graden, 496 F.3d at 301. Accordingly, Plaintiff has no claim in this case under § 1132(a)(2).

Although it is clear that § 1132(a)(2) is not an appropriate statutory provision in this case, that does not mean Plaintiff has no claim of breach of fiduciary duty. Rather, such a claim should have been brought under § 1132(a)(3). See Varity, 516 U.S. 489, 510 (1996) (stating that § 1132(a)(3) authorizes individual relief for breach of fiduciary obligations); Greene v. Hartford Life and Accident Ins. Co., No. 13-6033, 2014 WL 4473725, at *1 n.1 (E.D. Pa. Sept. 10, 2014) (stating that the breach of fiduciary claim should have been brought in § 1132(a)(3) because that section allows for equitable relief for violations of ERISA). Therefore, the Court will treat Plaintiff's claim for breach of fiduciary as if brought under § 1132(a)(3) and will discuss it along with Count IV in the Complaint, which is a claim for equitable relief under the same section. (See Compl.)

Count III seeks relief for failure to provide benefits, failure to provide plan documents, and failure to timely review Plaintiff's appeal in violation of 29 C.F.R. § 2560.503-1.[10] (See id.) Similarly, and while specifically alleging that his claim for disability benefits "does not provide an adequate remedy at law," Plaintiff requests relief in Count IV for his disability benefits and for a document penalty. (See id.) Defendants move for summary judgment on the premise that a claim for equitable relief under § 1132(a)(3) is improper when another section of ERISA provides an adequate remedy. (See Defs.' Mem. Support Mot. Summ. J. at 17.)

In support of their argument, Defendants rely on Varity, where the Supreme Court, in discussing § 1132(a)(3), provided that "we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" Varity, 516 U.S. at 515 (citing Russell, 473 U.S. at 144). Defendants argue that because § 1132(a)(1)(B) provides an adequate remedy for Plaintiff for his benefits claim, his claim for equitable relief fails pursuant to Varity. (See Defs.' Mem. Support Mot. Summ. J. at 17.)

In contrast, Plaintiff relies on the recent decision from the United States District Court for the Eastern District of Pennsylvania's decision in Lash v. Reliance Standard Life Ins. Co., No. 16-0235, 2017 WL 1232177 (E.D. Pa. Apr. 4, 2017), where the court opined that "[m]ost courts have concluded that Varity in no way prohibits plaintiffs from simultaneously asserting claims

---

[10] While Plaintiff may claim a violation of 29 C.F.R. § 2560.503-1, it is clear that the Court cannot afford him any relief under that provision at this juncture. As it pertains to disability benefits,

> if the plan fails to strictly adhere to all the requirements of this section with respect to a claim, the claimant is deemed to have exhausted the administrative remedies available under the plan. . . . Accordingly, the claimant is entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

29 C.F.R. § 2560.503-1(l)(2)(i). Accordingly, the fact that Plaintiff was ultimately denied benefits and was not impacted in filing suit in this Court moots a violation of the claims procedure.

pursuant to both § 1132(a)(1)(B) and § 1132(a)(3) in their complaints." <u>Lash</u>, 2017 WL 1232177, at *6 (collecting cases). Thus, Plaintiff argues that his claim for equitable relief under § 1132(a)(3) must survive summary judgment. (<u>See</u> Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. at 17-18.)

The United States Courts of Appeals have reached differing conclusions as to whether a plaintiff may simultaneously pursue claims under §§ 1132(a)(1)(B) and 1132(a)(3), and the Third Circuit has not yet spoken on the issue. <u>See</u> <u>Greene</u>, 2014 WL 4473725, at *3 (collecting and comparing cases). However, numerous courts have concluded that a plaintiff cannot maintain a claim under § 1132(a)(3) when it does not plead a distinct remedy from the other counts. <u>See</u> <u>Moyle v. Liberty Mut. Ret. Benefit Plan</u>, 823 F.3d 948, 961 (9th Cir. 2016) (en banc) (stating that the Eighth Circuit "permits plaintiffs to present § 1132(a)(1)(B) and § 1132(a)(3) as alternative—rather than duplicative—theories of liability. This approach is an accurate application . . . because it allows plaintiffs to plead alternate theories of relief without obtaining double recoveries"); <u>Silva v. Metro. Life Ins. Co.</u>, 762 F.3d 711, 726 (8th Cir. 2014) (stating that <u>Varity</u> prohibits plaintiffs from duplicative recoveries when a more specific section of the statute provides a remedy); <u>Greene</u>, 2014 WL 4473725, at *4 (dismissing § 1132(a)(3) claim because plaintiff could not identify any relief separate from relief under § 1132(a)(1)(B)); <u>Miller v. Mellon Long Term Disability Plan</u>, 721 F. Supp. 2d 415, 423 (W.D. Pa. 2010) (dismissing § 1132(a)(3) claim because plaintiff had an adequate remedy at law under § 1132(a)(1)(B)); <u>Clark</u>, 527 F. Supp. 2d at 117 (dismissing § 1132(c)(1) claim because relief under § 1132(a)(1)(B) would have made plaintiff whole). Moreover, § 1132(a)(3) limits relief to "appropriate equitable relief," and "the Supreme Court has cautioned that a court must look past the label applied by the plaintiff to determine if the relief is appropriately framed in equity."

<u>Clark</u>, 527 F. Supp. 2d at 117 n.1; <u>see also</u> <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204, 210 (2002) (stating that suits seeking to compel the defendant to pay a sum of money are suits for money damages, which is "the *classic* form of legal relief") (quoting <u>Bowan v. Massachusetts</u>, 487 U.S. 879, 918-19 (1988) (Scalia, J., dissenting)) (emphasis in original).

In Counts III and IV, Plaintiff seeks remedies that are identical to those prayed for in Counts I and II.  (<u>See</u> Compl.)  Counts III and IV each claim relief for disability benefits and a document penalty for failure to provide plan documents.  (<u>See</u> <u>id.</u>)  However, those remedies are exactly what Plaintiff seeks in Counts I and II, which were brought under §§ 1132(a)(1)(B) and 1132(c), respectively.  Further, Plaintiff seeks monetary relief for the disability benefits and the document penalty, which constitutes legal relief, not injunctive relief.  Plaintiff's equitable relief "is essentially 'a claim for benefits expressed in equitable language,'" and thus he has not sought "appropriate equitable relief" under § 1132(a)(3).  <u>Clark</u>, 527 F. Supp. 2d at 117 n.1 (quoting <u>Fairview</u>, 2007 WL 978089, at *6).  Accordingly, summary judgment with respect to Counts III and IV is granted as to Defendants and denied as to Plaintiff.

## IV.    <u>CONCLUSION</u>

Excluding any calculation of additional hours for workers' compensation, unemployment compensation, and vacation time, the Board of Trustees was correct in determining that Plaintiff had accrued 894 benefit hours in 2011 and 2012.  Therefore, whether Plaintiff reaches the 1,000 benefit hour threshold in order to receive disability pension benefits depends on if those additional hours are considered in "Covered Employment."  In turn, "Covered Employment" is "Hours of Service" in which an employer is obligated to make contributions to the Plan or Trust.  In denying Plaintiff disability pension benefits, the Board of Trustees simply concluded that there was no evidence or indication that Plaintiff's employer was

obligated to make contributions to the Plan for the additional hours that Plaintiff sought. However, the evidence or indication, the absence of which the Board of Trustees relied on, would be found in the CBA between Plaintiff's employer and the IUPAT. Because the Board of Trustees did not consider the CBA in determining whether the employer had to make such contributions to the Pension Plan for the additional time that Plaintiff seeks, and thus, whether those hours are in "Covered Employment," the Court finds the Board's decision to be arbitrary and capricious. Accordingly, and as it pertains to Count I of the Complaint, the Court remands this matter to the Board of Trustees to consider the CBA so that there can be a determination of whether Plaintiff's employer was obligated to make contributions to the Pension Plan for Plaintiff's claim of workers' compensation, unemployment compensation, and vacation time.

Additionally, and while there was clearly a withholding of the IUPAT Pension Plan document in this matter, the Court finds that the Defendants are not subject to a document penalty under ERISA. Here, Plaintiff made only two requests for documents. After receiving numerous documents pursuant to those requests, Plaintiff claims the Defendants failed to provide the IUPAT Pension Plan itself. However, Plaintiff never made a follow-up request for the Pension Plan, despite realizing that the document had not been provided. Further, there is no evidence of bad faith or intentional conduct on the part of Defendants, nor did Plaintiff suffer any prejudice as a result of not having the IUPAT Pension Plan before his administrative appeal deadline passed. Plaintiff makes absolutely no argument concerning the relevancy of the IUPAT Pension Plan amendments in any manner. Accordingly, Defendants are entitled to summary judgment regarding Count II of the Complaint, and Plaintiff is denied summary judgment.

Lastly, Plaintiff's claim of breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(2) is clearly not cognizable in this matter, as it is obvious that Plaintiff filed suit for individual relief,

as opposed to relief on behalf of the Pension Plan. Therefore, the Court construes the breach of fiduciary claim in Count III as if brought under 29 U.S.C. § 1132(a)(3), the same section of which the claim for equitable relief is sought in Count IV. However, Plaintiff seeks relief in Counts III and IV that are identical to the relief requested in Counts I and II. Further, Plaintiff's request for equitable relief is not truly equitable, as he merely seeks monetary damages as a result of being denied benefits and for Defendants' withholding of plan documents. Accordingly, Defendants are entitled to summary judgment as to Counts III and IV, and Plaintiff is denied summary judgment as to those counts.

An appropriate Order follows.