# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORMAN HANSEN, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 16-5028 |
| | : | |
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION PLAN and BOARD OF TRUSTEES OF THE INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION PLAN, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                       **AUGUST 1, 2018**

This matter returns to the Court following our remand to Defendant Board of Trustees of

the International Painters and Allied Trades Industry Pension Plan ("the Board"). After the

parties previously filed Cross-Motions for Summary Judgment, the Court entered an October 11,

2017 Order finding the Board's decision to deny Plaintiff Norman Hansen ("Hansen") disability

pension benefits to be arbitrary and capricious and remanding the matter for a determination of

whether certain hours to which Hansen claimed an entitlement should have been included in the

calculus. After remand, the Board once again denied Hansen disability pension benefits.

Presently before the Court are the Cross-Motions for Summary Judgment of Hansen and

Defendant International Painters and Allied Trades Industry Pension Plan (the "Plan" or the

"Pension Plan") and the Board (collectively, "Defendants"), along with their respective

responses and replies.  For the reasons noted below, Hansen's Motion is denied, and Defendants'

Motion is granted.

## I.     BACKGROUND

All of the facts prior to our remand are detailed in our October 11, 2017 Memorandum

Opinion.  *See Hansen v. Int'l Painters & Allied Trades Indus. Pension Plan*, No. 16-5028, 2017

WL 4539217, at *1-3 (E.D. Pa. Oct. 11, 2017).  To summarize briefly, Hansen was an active

member of the International Union of Painters and Allied Trades ("IUPAT") and was a vested

participant in the Pension Plan.  *Id.* at *1.  In January 2012, he was injured during work and

subsequently entered into a "Workers' Compensation Compromise and Release Agreement" that

settled all wage, medical, and specific loss benefits related to his work injury.  *Id.*  Hansen also

sought disability benefits from the Social Security Administration, and he agreed to the date of

September 3, 2013 for the purpose of establishing disability under the Social Security Act.  *Id.*

In February 2015, Hansen applied for disability pension benefits from the Pension Plan.

*Id.* at *2.  His application was denied in April 2015 on the basis that he did not meet the

requirement of Article 6, Section 6.12(4), which provides that a claimant must have "at least

1,000 Hours of Service in Covered Employment in the two Calendar Years prior to the year in

which he or she became disabled."  *Id.*

Hansen timely appealed the decision and advanced several arguments in support of his

position that he exceeded the 1,000-hour threshold.  *Id.*  First, he claimed he accumulated 998

hours of work in 2011 and 2012 and that Defendants should have rounded-up to ensure he met

the 1,000-hour requirement.  *Id.*  Second, he argued that Defendants "cherry-picked" information

because they used his earned hours in 2011 and 2012, which came to 894 hours, rather than his

paid hours during those years, which came to 998 hours.  *Id.*  Finally, he claimed that Defendants

refused to credit him with additional benefit hours for workers' compensation, unemployment compensation due to layoff, and vacation benefits. *Id.*

The Board denied Hansen's appeal at a December 2015 meeting. For clarity, we reiterate that Hansen must have had 1,000 *Hours of Service* in *Covered Employment* in the years 2011 and 2012 to be eligible for a disability pension. In denying Hansen benefits, the Board relied on subsection (a) of the definition of Covered Employment, which is "work or leave time that is . . . Hours of Service for which an Employer is obligated to make contributions to the Plan or the Trust for credit to the Plan[.]" *Id.* The Board reasoned that Hansen's benefit hours totaled 894 and that he was not entitled to additional hours for workers' compensation, unemployment compensation, and vacation pay because "[t]here [was] no indication that [Plaintiff's] employer was obligated to make contributions to the Plan for [those] payment[s]." *Id.* (alterations in original).

In September 2016, Hansen filed a four-count Complaint in this Court following the Board's denial of benefits. Count I claimed benefits pursuant to 29 U.S.C. § 1132(a)(1)(B); Count II alleged failure to provide plan documents in violation of § 1132(c)(1); Count III was a claim of breach of fiduciary duty under § 1132(a)(2); and Count IV requested equitable relief under § 1132(a)(3). *Id.* at *3. After the parties filed Cross-Motions for Summary Judgment, we entered an Order on October 11, 2017 that denied Hansen's Motion in its entirety and granted in part and denied in part Defendants' Motion. (*See* Doc. No. 17.) Accordingly, all of Hansen's claims were dismissed with prejudice except for his claim for benefits in Count I.

We remanded Count I to the Board for a determination of whether the additional hours for workers' compensation, unemployment compensation, and vacation benefits should have been included in the computation for Hansen's disability pension. (*See id.*) In doing so, we

found that the Board's reasoning was "troubling" in its statement that the additional hours

Hansen sought were not in "Covered Employment" because there was no claim or evidence in

the record that contributions were paid or payable for them. *See Hansen*, 2017 WL 4539217, at

*9. However, whether contributions were required for workers' compensation, unemployment

compensation, and vacation benefits would be found in the collective bargaining agreements

("CBA") between the IUPAT and Hansen's employers. *Id.* The CBAs were not included in the

administrative record, nor did it appear that the Board considered them in denying Hansen

benefits. *Id.* at *10. As a result, we concluded that the Board's denial of Hansen's disability

pension was not based on substantial evidence and remanded the matter to the Board "for a

determination of whether [Hansen's] employer[s] w[ere] obligated to make contributions to the

Pension Plan pursuant to [the] [CBAs] between [Hansen's] employer[s] and the [IUPAT]."

(Doc. No. 17.)

Following our remand Order, Defendants provided Hansen with three separate CBAs that

were in effect during the relevant time period. (Pl.'s Mem. Law Supp. Mot. Summ. J. 4.) The

substantive portions of the CBAs are identical, with only the pay rates for various employers

differing. (*Id.*) In January 2018, Hansen submitted a "Memorandum to the IUPAT Board of

Trustees Pursuant to the October 11, 2017 Memorandum Opinion and Order of Judge Robert F.

Kelly" that advanced his arguments regarding why the CBAs required Defendants to credit him

with additional "Hours of Service" in "Covered Employment," such that he met the eligibility

requirements for a disability pension. (*Id.*; *see also* AR 1189-1200.[1])

---

[1] Our previous Memorandum Opinion relied on the Administrative Record the parties filed, which can be located at Doc. No. 9. The original Administrative Record is Bates-Numbered AR 1 through AR 636. Following our remand Order and the Board's consideration of additional documents, we allowed the parties to file a Supplemental Administrative Record on March 26, 2018. The Supplemental Administrative Record is located at Doc. No. 24, and is Bates-Numbered AR 637 through AR 1206.

The Board considered Hansen's appeal at a January 2018 meeting and reaffirmed the denial of benefits in a letter dated February 7, 2018. (*Id.*; AR 1201-06.) In the denial letter, the Board stated that "the specific terms of the [CBAs] were not addressed in the original appeal" and that, while the Board included members familiar with the CBAs, "the actual contracts help complete the record." (AR 1203.) As to additional hours for workers' compensation and unemployment compensation, the Board concluded that Hansen was not entitled to credit for them because they were not "Hours of Service" nor in "Covered Employment." (*Id.* at 1204.) Regarding vacation benefits, the Board found that the $822 amount on Hansen's W-2 forms, (*see id.* at 116-17), did "not reflect any actual vacation hours taken by Hansen and [was] simply a supplemental wage for each 'hour paid' under the agreement."[2] (*Id.* at 1204.) Thus, the Board concluded that, although the CBAs did not require Hansen's employers to pay contributions to the Pension Plan for his theoretical vacation time, "the only possible calculation of such hours would be to take the amount of vacation pay received and then divide that by Hansen's wage rate for the same period." (*Id.* at 1205.) After dividing the $822 in vacation pay by Hansen's lower wage rate of $32.69 per hour, the Board found that, at most, Hansen would be entitled to credit for twenty-six vacation hours. (*Id.*) The addition of twenty-six hours would put Hansen at 920 hours for purposes of a disability pension, an amount still short of the 1,000-hour requirement. (*Id.*)

On February 23, 2018, Hansen filed a "Motion for Relief From IUPAT Board of Trustee's Remand Decision and to Reopen Case" pursuant to Federal Rule of Civil Procedure 60(b). We granted Hansen's Rule 60(b) Motion, returned the case to the active docket, and subsequently issued a Scheduling Order providing deadlines to file the Supplemental

---

[2] Hansen's W-2 statement from Economy Decorators Inc. notes vacation benefits in the amount of $678, (AR 116), and his W-2 statement from Circle Wallcoverings Inc. notes $144 in vacation benefits, (AR 117).

Administrative Record and Cross-Motions for Summary Judgment. As indicated above in the

margin, the parties filed the Supplemental Administrative Record on March 26, 2018, and Cross-

Motions for Summary Judgment were filed on April 25, 2018. Pursuant to our Scheduling

Order, the parties also filed responses to the Cross-Motions on May 25, 2018.

## II.    LEGAL STANDARD

### A.    Rule 56(a) Standard

Federal Rule of Civil Procedure 56(a) states that summary judgment is proper "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court asks "whether the evidence

presents a sufficient disagreement to require submission to the jury or whether . . . one party

must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The moving party has the initial burden of informing the court of the basis for the motion and

identifying those portions of the record that demonstrate the absence of a genuine dispute of

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A fact is material if it could

affect the outcome of the suit after applying the substantive law. Further, a dispute over a

material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could

return a verdict in favor of the non-moving party.'" *Compton v. Nat'l League of Prof'l Baseball

Clubs*, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998) (quoting *Liberty Lobby*, 477 U.S. at 255).

Summary judgment must be granted "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Once the moving party

has produced evidence in support of summary judgment, the non-moving party must go beyond

the allegations set forth in its pleadings and counter with evidence that presents "specific facts

showing that there is a genuine issue for trial." *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. *Tziatzios v. United States*, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines there are no genuine disputes of material fact, then summary judgment will be granted. *Celotex*, 477 U.S. at 322.

### B.     Denial of Benefits Under ERISA

A plan administrator's denial of benefits is reviewed under a *de novo* standard unless "the plan document 'gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Dowling v. Pension Plan For Salaried Emps. of Union Pac. Corp. & Affiliates*, 871 F.3d 239, 245 (3d Cir. 2017) (quoting *Conkright v. Frommert*, 559 U.S. 506, 512 (2010)). "If the plan gives the administrator or fiduciary discretionary authority to make eligibility determinations, [a court] review[s] its decisions under an abuse-of-discretion (or arbitrary and capricious) standard." *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011) (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008); *Doroshow v. Hartford Life & Accident Ins. Co.*, 574 F.3d 230, 233 (3d Cir. 2009)) (footnote omitted). The abuse-of-discretion standard of review is used interchangeably with the arbitrary and capricious standard of review in the ERISA context. *Id.* at 413 n.4 (citing *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 793 n.6 (3d Cir. 2010)). "Under the abuse-of-discretion standard, [a court] may overturn an administrator's decision only if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Id.* (citing *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011)).

"ERISA plan administrators are fiduciaries, and 'if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a facto[r] in determining whether' the administrator's benefits decision should stand." *Dowling*, 2017 WL 4079460, at *8 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)) (alteration in original). "The factors may include procedural concerns about the administrator's decision-making process and structural concerns about the conflict of interest inherent in the way the ERISA-governed plan was funded." *Patrick v. Devon Health Servs., Inc.*, 828 F. Supp. 2d 781, 793 n.14 (E.D. Pa. 2011). "'[T]he procedural inquiry focuses on how the administrator treated the particular claimant.'" *Miller*, 632 F.3d at 845 (quoting *Post v. Hartford Ins. Co.*, 501 F.3d 154, 162 (3d Cir. 2007)). "Specifically, in considering the process that the administrator used in denying benefits, we have considered numerous irregularities to determine whether, in this claimant's case, the administrator has given the court reason to doubt its fiduciary neutrality." *Id.* (quoting *Post*, 501 F.3d at 165) (internal quotation marks omitted). However, the lawfulness of the administrator's decision will rest on case-specific factors that must be weighed together. *See id.* (quoting *Glenn*, 554 U.S. at 117).

"In applying the arbitrary and capricious standard in ERISA actions, a court is limited to reviewing the evidence contained within the administrative record." *Clauss v. Plan*, 196 F. Supp. 3d 463, 469 (M.D. Pa. 2016) (citing *Abnathya v. Hoffman-La Roche, Inc.*, 2 F.3d 40, 48 n.8 (3d Cir. 1993), *abrogated on other grounds by Glenn*, 554 U.S. at 105); *see also Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997).

## III. DISCUSSION[3]

The Court is tasked with determining whether the Board was correct in its decision that

Hansen lacked the 1,000-hour requirement to be eligible for a disability pension. For eligibility,

the additional hours that Hansen claims should be credited must be "Hours of Service" that are in

"Covered Employment." (AR 33.) The Pension Plan defines "Hour of Service" as

> (a) Each hour for which an Employee is paid or entitled to payment for the performance or nonperformance of duties with an employer[;]

> \* \* \*

> (c) Each hour for which an Employee is paid, or entitled to payment, by an employer, its agent or a plan maintained by the employer on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence other than payments made solely for the purpose of complying with applicable worker compensation, unemployment compensation or disability insurance laws or to provide reimbursement of medical expenses[;] [and]

> (d) Hours of service shall be computed and credited in accordance with DOL Regulation [29 C.F.R. §] 2530.200-b(2) [sic].

(*Id.* at 424.) In turn, the pertinent subsection of "Covered Employment" defines the term as

"work or leave time that is . . . (a) Hours of Service for which an Employer is obligated to make

contributions to the Plan or the Trust for credit to the Plan." (*Id.* at 421.)

---

[3] In our prior Memorandum Opinion, we noted that the Board was authorized "with the exclusive right of discretion to construe the terms of the IUPAT Pension Plan and determine eligibility for benefits." *Hansen*, 2017 WL 4539217, at \*4 (footnote omitted) (citing AR 391-92). Accordingly, our review of the Board's denial of benefits was under the arbitrary and capricious standard of review. *Id.* However, we also concluded that, because the Board evaluates claims for benefits and the funds are paid out of the Pension Plan, there was a conflict of interest under the Supreme Court of the United States' decision in *Glenn*. *Id.* at \*6. Although the Board operates under a conflict of interest, we gave the conflict "extremely little weight." *Id.* at \*7. For purposes of the instant Cross-Motions for Summary Judgment, they will be evaluated based on the same standard and conflict analysis as articulated in our October 11, 2017 Memorandum Opinion.

Without inclusion of the additional hours for workers' compensation, unemployment compensation, and vacation benefits, Hansen stands 106 hours short of the mark. As indicated above, the Board concluded that Hansen was not entitled to credit for workers' compensation and unemployment compensation and excluded such hours entirely on the basis that they are not "Hours of Service" or in "Covered Employment." Regarding vacation pay, the Board stated that based on the applicable sections of the CBAs, Hansen would, at best, receive an additional 26 hours, putting his total at 920. For the reasons that follow, we agree with the Board's interpretation of the Pension Plan and find that its denial of benefits was based on substantial evidence.

A.     **Hours for Workers' Compensation and Unemployment Compensation**

In our prior Memorandum Opinion, we noted that the crucial question of whether the additional hours Hansen sought were in "Covered Employment" was determined by the CBAs between his employers and the IUPAT. Because there was no evidence that the Board considered the CBAs, we concluded that its decision to deny Hansen disability pension benefits was arbitrary and capricious. On remand, the Board considered the CBAs and concluded that Hansen was not entitled to credit for workers' compensation and unemployment compensation hours because they were not "Hours of Service" in "Covered Employment." (*Id.* at 1203-04.) Contrary to the Board's interpretation, we previously stated that "[a]ll of the hours [Hansen] claims appear to come within the definition of 'Hour of Service.'" *Hansen*, 2017 WL 4539217, at *9. However, given the clarity that hours for workers' compensation and unemployment compensation are not in "Covered Employment," we will assume, without deciding, that these hours are "Hours of Service."

In support of his argument that he should have been credited with additional hours for workers' compensation and unemployment compensation, Hansen puts substantial reliance on § 13.14.3 of the CBAs, which provides that "each hour worked for, including hours attributable to show up time, and other hours for which pay is received by the employee in accordance with the Agreement, shall be counted as hours for which contributions are payable." (AR 958, § 13.14.3) (capitalization omitted). He states that the phrase "and other hours for which pay is received by the employee" mandates the inclusion of workers' compensation and unemployment compensation hours because he received payments for his injury and time off during 2011. (Pl.'s Mem. Law Supp. Mot. Summ. J. 11; *see also* AR 57 (Workers' Compensation Release), 120 (Pennsylvania Unemployment Compensation Payments).)

In response, Defendants note that the only reference to workers' compensation and unemployment compensation in the CBAs provides that the employers will maintain workers' compensation coverage and unemployment insurance. (Defs.' Mem. Law Supp. Renewed Mot. Summ. J. 9-10) (citing AR 949, 967, §§ 12.1, 18.1). They argue Hansen's reliance on § 13.14.3 is misplaced because "the other hours for which pay is received by the employee" must be "*in accordance with the [CBAs]*." (*Id.* at 7, 9-10.) Because the CBAs do not obligate employers to make contributions to the Pension Plan for workers' compensation or unemployment compensation, Defendants state that such hours are not in "Covered Employment."

Simply put, Defendants are correct in that there is no requirement in the CBAs that Hansen's employers were obligated to make contributions to the Pension Plan for workers' compensation and unemployment benefits payments. Indeed, Hansen fails to point to any section of the CBAs that require contributions for such hours. Accordingly, hours for workers'

11

compensation and unemployment compensation were not hours in "Covered Employment," and therefore properly excluded for purposes of Hansen's eligibility for a disability pension.

### B. Hours for Vacation Benefits

The most substantial disagreement between the parties appears to be Hansen's claim for vacation hours. Under the CBAs between Hansen's employers and the IUPAT, certain contributions would be made by the employers to the "Vacation Fund for the purpose of providing vacation benefits to eligible workers and their families." (AR 952-53, § 13.4.) For every hour an employee worked, the employer would make a one-dollar contribution to the Vacation Fund and make a notation of the deduction on the employee's pay envelope or check stub. (*Id.* at 975, § 23.15.1.) The CBAs further provide that "each hour worked for, including hours attributable to show up time, and other hours for which pay is received by the employee in accordance with the Agreement, shall be counted as hours for which contributions are payable." (*Id.* at 958, § 13.14.3) (capitalization omitted).

In support of his argument that the Board erred in failing to credit him with vacation hours, Hansen first points to his W-2 forms from Economy Decorations Inc. and Circle Wallcoverings Inc., which collectively show vacation benefits in the amount of $822. (*See id.* at 116-17.) From there, he relies on §§ 13.14.3 and 23.15.1 of the CBAs for the proposition that he should have been credited for 822 additional hours of service. (Pl.'s Mem. Law Supp. Mot. Summ. J. 13-14.) Defendants respond that "[t]he $822 Hansen received as vacation pay simply reflects the amounts [sic] of contributions paid to the Vacation Fund for each hour Hansen actually worked under the [CBAs]." (Defs.' Mem. Law Supp. Renewed Mot. Summ. J. 8.) Defendants assert that Hansen is attempting to claim each hour of service twice, by first claiming credit for the hour for which he received the one-dollar contribution to the Vacation Fund, while

simultaneously seeking credit for one dollar as a vacation hour. (*Id.*) We agree with

Defendants' interpretation of the CBAs.

Section 23.15.1 of the CBAs provides that employers will contribute one dollar to the

*Vacation Fund* for every hour that an employee works. Hansen interprets this provision to mean

that he should have been credited with 822 additional hours because his W-2 statements list $822

in vacation benefits. However, as Defendants note, the $822 is merely a supplemental wage for

each hour paid under the CBAs and is paid regardless of whether an employee has vacation time

off. Under § 23.12, fringe benefits are paid "for each hour paid up to eight (8) hours and after

eight (8) hours, fringes on each hour worked." (AR 974, § 23.12.) Although the CBAs do not

require contributions to the Pension Plan for Hansen's theoretical vacation pay, Defendants are

correct in determining that the fringe benefits formula in § 23.12 shows that such contributions to

the *Pension Plan* would be calculated by taking his $822 in vacation benefits on his W-2

statements, divided by his hourly wage rate ($32.69), giving him, at best, an additional 26

hours.[4] (Defs.' Mem. Law Supp. Renewed Mot. Summ. J. 8-9.) The Board's interpretation of

the Pension Plan is supported by substantial evidence, and even if Hansen were credited with an

additional 26 vacation hours, his total would be well short of the 1,000-hour requirement.

## IV.     CONCLUSION

 For the reasons set forth above, Hansen's Motion for Summary Judgment is denied, and

Defendants' Motion for Summary Judgment is granted.

An appropriate Order follows.

---

[4] Hansen's wage rates were $32.69 per hour from May 1, 2010 through April 30, 2011 and $33.32 per hour from May 1, 2011 through April 20, 2012. (Defs.' Mem. Law Supp. Renewed Mot. Summ. J. 9.)